# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

### FORM TO BE USED IN FILING A COMPLAINT
### UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
(Prisoner Complaint Form)

*12CV0618A*

### 1. CAPTION OF ACTION

**A.**    **Full name a Prison Number of Plaintiff:**

1. Darnell Cummings, DIN: 04-B-2123, Eastern NY Correctional Facility, Box 338,
Napanoch, NY

-vs-

**B.**    **Full Names of Defendants:**

| | | | |
|---|---|---|---|
| 1. | David Paterson | 21. | G. Strubel |
| 2. | Brian Fischer | 22. | Mark Jones |
| 3. | Lester N. Wright | 23. | Dr. Jane Doe, Ophthalmologist |
| 4. | Schiele Brewer | | Wende C.F. (Oct.2008) |
| 5. | Dr. Edward Berger | 24. | David Unger |
| 6. | Dr. Robert Druger | 25. | Carol Edwards |
| 7. | Dr. Samuel Alpert | 26. | Gregory Mohring |
| 8. | Dr. David Girardi | 27. | Suzanne Jacobs |
| 9. | Dr. Evis Petrela | 28. | Bryan Bradt |
| 10. | Dr. Robert Austin | 29. | S. Durfee |
| 11. | Dr. John Doe#1 (Gowanda) | 30. | Dr. Bozer |
| 12. | Dr. John Doe#2 (Five Points) | 31. | M. Sheahan |
| 13. | Dr. John Doe#3 (Harrison Center) | 32. | Dr. Robert Eden |
| 14. | Dr. Joseph Haluska | 33. | Dr. Swan |
| 15. | Dr. Dr. Michael Belin | 34. | Dr. Weyand |
| 16. | Dr. Michael Celotti | 35. | Dr. Sandra Everett |
| 17. | James T. Conway | 36. | Dr. Abhishek Nemani |
| 18. | Sandra Dolce | 37. | Dr. Wurzel |
| 19. | Dr. J. Rao | | |
| 20. | Rouslin Killinger | | |

## 2.  STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action brought pursuant to 42 U.S.C. 1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. 1331, 1343(3) and 2201.

## 3.  PARTIES TO THIS ACTION

**PLAINTIFF/S INFORMATION:**

**Name and Prisoner Number of Plaintiff:** Darnell Cummings, DIN: 04-B-2123

**Present Place of Confinement & Address:** Eastern NY Correctional Facility, Box 338, Napanoch, New York 12458.

**DEFENDANT'S INFORMATION:**

1.  David Paterson, Governor, State of New York, Executive Chamber, State Capital, Albany NY 12224 (Defendant is being Sued in his Individual and Official Capacity).

2.  Brian Fischer, Commissioner of NY Department of Correctional Services, 1220 Washington Avenue, Albany, NY 12226-2050 (Defendant is being Sued in his Individual and Official Capacity).

3.  Lester N. Wright, DOCS Chief Medical Officer, NY Department of Correctional Services, 1220 Washington Avenue, NY 12226-2050 (Defendant is being Sued in his Individual and Official Capacity).

4.  Schiele Brewer, Health Care Provider, Camp Georgetown C.F. 3191 Crumbhill Rd., Georgetown, NY 13072 (Defendant is being Sued in his Individual and Official Capacity).

*Continued on Page 3*

5. Edward Berger, Optometrist, Camp Georgetown C.F., 3191 Crumbhill Road, Georgetown, N.Y. 13072-9307.

   Romulus, NY 14541 (Defendant is being Sued in his Individual and Official Capacity).

6. Robert Druger, Ophthalmologist, Five Points C.F., Caller Box 400, 6600 State Rt. 96, Romulus, NY 14541 (Defendant is being Sued in his Individual and Official Capacity).

7. Samuel Alpert, M.D., Five Points C.F., Caller Box 400, 6600 State Rt. 96, Romulus, NY 14541 (Defendant is being Sued in his Individual and Official Capacity).

8. David Girardi, Optometrist, Five Points C.F., Caller Box 400, 6600 State Rt. 96, Romulus, NY 14541 (Defendant is being Sued in his Individual and Official Capacity).

9. Evis Petrela, M.D. Harrison Center – Eye Clinic, Syracuse University, E.I. White Hall, Syracuse, NY 13244-1030 (Defendant is being Sued in his Individual and Official Capacity).

10. Robert Austin, Optometrist, Upstate C.F., 309 Bare Hill Rd., P.O. Box 2000, Malone, NY 12953 (Defendant is being Sued in his Individual and Official Capacity).

11. Dr. John Doe # 1, M.D., Gowanda C.F., South Road., P.O. Box 350, Gowanda, NY 14070 (Defendant is Sue in his Individual and Official Capacity).

12. Dr. John Doe # 2, M.D. Five Points C.F., Caller Box 400, 6600 State Rt. 96, Romulus, NY 14541(Defendant is being Sued in his Individual and Official Capacity).

13. Dr. John Doe # 3, Ophthalmologist, Harrison Center – Eye Clinic, Syracuse University, E.I., White Hall, Syracuse, NY 13244-1030 (Defendant is being Sued in his Individual and Official Capacity).

14. Joseph Haluska, M.D., Southport C.F., 236 Bob Mascia Dr., P.O. Box 2000, Pine City,

*Continued on Page 4*

3

NY 14871-2000 (Defendant is being Sued in his Individual and Official Capacity).

15. Michael Belin, Ophthalmologist, Great Meadow C.F., 11739 State Rt. 22, P.O. Box 51, Comstock, NY 12821-0051 (Defendant is being Sued in his Individual and Official Capacity).

16. Michael Celotti, Optometrist, Great Meadow C.F., 11739 State Rt. 22, P.O. Box 51, Comstock, NY 12821-0051 (Defendant is being Sued in his Individual and Official Capacity).

17. James T. Conway, Superintendent, Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in his Individual and Official Capacity).

18. Sandra Dolce, Deputy Superintendent of Programs, Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in her Individual and Official Capacity).

19. J. Rao, M.D. Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in his Individual and Official Capacity).

20. Rouslin Killinger, Nurse Administrator, Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in her Individual and Official Capacity).

21. G. Strubel, Inmate Grievance Supervisor, Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in his Individual and Official Capacity).

22. Mark Jones, Inmate Grievance Supervisor, Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in his Individual and Official Capacity).

23. Dr. Jane Doe, Ophthalmologist, Wende C.F., P.O. Box 1187, Alden, NY 14004-1187 (Defendant is being Sued in her Individual and Official Capacity).

24. David Unger, Superintendent, Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica,

*Continued on Page 5*

NY 14011-0501 (Defendant is being Sued in his Individual and Official Capacity).

25. Carol Edwards, Deputy Superintendent of Programs, Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica, NY 14011-0501 (Defendant is being Sued in her Individual and Official Capacity).

26. Gregory Mohring, Nurse Administrator, Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica NY 14011-0501 (Defendant is being Sued in his Individual and Official Capacity).

27. Suzanne Jacobs, Director, Sensory Disability Unit (SDU) Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica, NY 14011-0501 (Defendant is being Sued in his Individual and Official Capacity).

28. Bryan Bradt, Staff, Sensory Disability Unit (SDU) Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica, NY 14011-0501 (Defendant is being Sued in his Individual and Official Capacity).

29. S. Durfee, Deputy Superintendent of Administration, Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica, NY 14011-0501 (Defendant is being Sued in his Individual and Official Capacity).

30. Dr. Bozer, Primary Healthcare Provider, Wyoming C.F., 3203 Dunbar Rd., P.O. Box 501, Attica, NY 14011-0501 (Defendant is being Sued in his Individual and Official Capacity).

31. M. Sheahan, Southport C.F., 236 Bob Mascia Dr., P.O. Box 2000, Pine City, NY 14871-2000 (Defendant is being Sued in his Individual and Official Capacity).

32. Dr. Robert Eden, Ophthalmologist, Eastern NY Correctional Facility, P.O. Box 338, Napanoch, NY 12458 (Defendant is being Sued in his Individual and Official Capacity).

*Continued on Page 6*

5

33. Dr. Swan, Optometrist, eastern NY Correctional Facility, Box 338, Napanoch, NY 12458 (Defendant is being Sued in his Individual and Official Capacity).

34. Dr. Weyand, Optometrist, Attica C.F., 639 Exchange St., Attica, NY 14011-0149 (Defendant is being Sued in his Individual and Official Capacity).

35. Dr. Sandra Everett, Ophthalmologist, Erie County Medical Center, 462 Grider St., Buffalo, NY 14215-3098 (Defendant is being Sued in her Individual and Official Capacity).

36. Dr. Abhishek Nemani, Ophthalmologist, Harrison Center – Eye Clinic, Syracuse University, E.I. White Hall, Syracuse, NY 13244-1030 (Defendant is being Sued in his Individual and Official Capacity).

37. Dr. Wurzel, Optometrist, Eastern NY Correctional Facility, PO Box 338, Napanoch, NY 12458 (Defendant is being Sued in his Individual and Official Capacity).

---

### 4.    PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.    Have you begun any other lawsuits in State or Federal Court dealing with the same facts involved in this action? Yes ____ No ✓.

B.    Have you begun any other lawsuits in Federal Court which relate to your imprisonment dealing with the same facts involved in this action? Yes ____ No ✓.

### 5.    STATEMENT OF CLAIM

**A. FIRST CLAIM:** Beginning in early September 1999 (defendants: Schiele Brewer, Health Care Provider, Camp Georgetown C.F., Edward Berger, Optometrist, Camp Georgetown C.F., Robert Druger, Ophthalmologist, Five Points C.F., Samuel Alpert, M.D., Five Points C.F., David Girardi, Optometrist, Five Points C.F., Evis Petrela, M.D., Harrison Center – Eye Clinic, Syracuse University, Robert Austin, Optometrist, Upstate C.F., Joseph Haluska, M.D., Southport

C.F., Michael Belin, Ophthalmologist, Great Meadow C.F., Michael Celotti, Optometrist, Great Meadow C.F., Dr. John Doe # 1, M.D., Gowanda C.F., Dr. John Doe # 2, M.D., Five Points C.F., Dr. John Doe # 3, Ophthalmologist, Harrison Center – Eye Clinic, Syracuse University, James T. Conway, Superintendent, Attica C.F., Sandra Dolce, Deputy Superintendent of Programs, Attica C.F., Dr. J. Rao, M.D., Attica C.F., Rouslin Killinger, Nurse Administrator, Attica C.F., Dr. Jane Doe, Ophthalmologist, Wende C.F., Dr. Weyand, Optometrist, Attica C.F., Dr. Robert Eden, Ophthalmologist, Eastern NY C.F., Dr. Swan, Optometrist, Eastern NY C.F., Dr. Sandra Everett, Ophthalmologist, Erie County Medical Center, Dr. Abhishek Nemani, Ophthalmologist, Harrison Center – Eye Clinic, Syracuse University, Lester N. Wright, DOCS Chief Medical Officer, Brian Fischer, Commissioner of DOCS NY, Dr. Wurzel, Optometrist, Eastern NY C.F.), did the following to Plaintiff while incarcerated by the New York State department of Correctional Services (NYSDOCS) beginning at the Camp Georgetown Correctional facility. Plaintiff was diagnosed with a serious eye disease (Keratoconus), which had damaged his eyesight beyond the New York State standards of being Legally Blind (20/200 ft.). The nature of this eye disease is a chronic progressive reformation of the cornea, which only gets worse as time yields itself. Plaintiff was prescribed contact lenses by NYSDOCS, Health Department, to correct his disabling eyesight. The prescribing of said contacts lenses, at the direction of the Health Care providers to wear them in order to see, and the constant wearing of said lenses has caused irreparable damage to plaintiff's eyes by severe scarring of the cornea area:

1. In early September 1999, defendant, Dr. Edward Berger, optometrist, diagnosed Plaintiff with Keratoconus and recommended contact lenses to improve his vision.

2. Dr. Berger then referred Plaintiff to the NYSDOCS Walsh Regional Medical Unit (RMU) to consult with an ophthalmologist.

3.    At the Walsh (RMU), Plaintiff was examined by defendant Dr. Schiele Brewer, Ophthalmologist. Dr. Brewer agreed with Dr. Berger's assessment that wearing contact lenses would improve Plaintiff's vision.

4.    Dr. Brewer wrote a prescription for contact lenses and referred Plaintiff back to the Optometrist, Dr. Berger. On October 30, 1999, Plaintiff was fitted for contact lenses.

5.    On January 18, 2000, the contact lenses were dispensed and Plaintiff began wearing them regularly until May of 2001.

6.    In May of 2001, while in Gowanda Correctional Facility, Plaintiff reported the contact lenses lost while in the Special housing Unit (SHU).

7.    Also in May of 2001, at Gowanda C.F., Plaintiff was examined by defendant Dr. John Doe # 1, who referred Plaintiff to the Wende C.F. to be evaluated for new contact lenses.

8.    However, between May 2001 and May 17 2002, Plaintiff was not seen, examined, nor evaluated by anyone regarding Plaintiff's Keratoconus or replacement of the contact lenses.

9.    On May 17, 2002, Plaintiff was released from the case, custody and control of the NYSDOCS,

10.    In September of 2004, Plaintiff returned to prison (Five Points C.F.). Upon Plaintiff's return, he was examined by, defendant, Dr. John Doe # 2 and re-diagnosed with Keratoconus. Based on Plaintiff's medical file from his previous years in prison, Plaintiff was referred to an ophthalmologist, defendant Dr. R. Druger.

11.     On November 23, 2004, Dr. Druger agreed with Dr, John Doe # 2's assessment and recommended contact lenses and referred Plaintiff to the optometrist.

12.     On December 9, 2004, Plaintiff was fitted for contact lenses at the Walsh (RMU) by defendant Dr. Edward Berger, Optometrist.

13.     On January 27, 2005, the contact lenses were dispensed by Dr. Berger at the Walsh (RMU).

14.     On May 11, 2005, Dr. Berger at the Walsh (RMU) evaluated Plaintiff and noted that he was developing a cone in the right eye and it is complicating the contact lens. Dr. Berger okayed the use of the contact lenses and scheduled another visit to the Walsh (RMU) in two (2) weeks.

15.     On May 26, 2005, Plaintiff returned to the Walsh (RMU) to be re-evaluated by the Optometrist, Dr. E. Berger, stated that he is referring Plaintiff back to the ophthalmologist for a Keratoconus evaluation and noted that Plaintiff has since had a failed contact lens and the Keratoconus is advancing and he should be reviewed for surgical intervention.

16.     On June 7, 2005, Plaintiff was examined by defendant, Dr. Samuel Alpert, M.D. at the Walsh (RMU). Plaintiff explained to the Doctor that the contact lenses were irritating his eye. He referred Plaintiff to the State University of New York (SUNY) Cornea Clinic to consider surgery (cornea transplant). He also recommended a follow-up visit with him in one 1 year.

17.     On August 4, 2005, Plaintiff was examined by defendant, Dr. Evis Petrela, M.D. at the Harrison Center-Eye Clinic, whom recommended that surgery was not

needed at that time, that Plaintiff should be refitted for new contact lenses, and scheduled a follow-up visit with him in 1 year.

18.    On August 30, 2005, Plaintiff was fitted for new contact lenses at the Walsh (RMU) by defendant, Dr. David Girardi, Optometrist.

19.    On January 9, 2006, Plaintiff was examined by defendant, Dr. Robert Austin, Optometrist, at Upstate C.F., but he provided no information regarding his examination.

20.    On April 10, 2006, Plaintiff was examined by defendant, Dr. Edward Berger, at the Walsh (RMU). Dr. Edward Berger informed Plaintiff that the contact lenses that Plaintiff was fitted for on August 30, 2005, were dispensed through Upstate C.F., Southport C.F., then back to the Walsh (RMU), that they were too steep and had large bubbles under each lens. Dr. Berger also stated that "perhaps (my) eyes can mold to contact lens", and Plaintiff should try them for a few weeks, 3-4 hours per day. It was also noted that the contact lenses were therapeutic, and can be worn in SHU.

21.    On May 10, 2006, Plaintiff returned to the Walsh (RMU) to see the Optometrist defendant Dr. Edward Berger. There, Dr. Berger told Plaintiff to use the contact lenses, the right eye is okay, and the lenses are for therapeutic purposes. Dr. Berger also explained that the contact lenses are correct even though the visual acuity is worse. He then ordered Plaintiff to return in six (6) months.

22.    On August 17, 2006, Plaintiff was returned to the Harrison Center – Eye Clinic, Department of Ophthalmology. Plaintiff was examined by defendant Dr. John Doe # 3, whom noted double vision acuity in the left eye with contact lens,

Keratoconus in both eyes, recommended to be re-fitted for contact lenses, and for a follow-up visit in three (3) months.

23. On February 1, 2007, Plaintiff returned to the Harrison Center – Eye Clinic Department of Ophthalmology, to be re-fitted for contact lenses. Contact lenses were ordered, and it was recommended that Plaintiff wear them for at least two (2) weeks, then be re-evaluated, it was also specified that Plaintiff wear the contact lenses "all the time".

24. On March 1, 2007, Plaintiff returned to the Harrison Center – Eye Clinic Department of Ophthalmology for contact lens dispensing. Plaintiff was given rubber contact lenses and suction cups in order to be able to remove the contact lenses appropriately. However, it was determined by defendant Dr. Joseph Haluska, Facility Health Services Director at Southport Correctional Facility, that there was no need for suction cups.

25. In August of 2007, Plaintiff was transferred from the Southport C.F. to the Great Meadow C.F.

26. On October 1, 2007, Plaintiff was sent to the Coxsackie Regional Medical Unit (RMU). Plaintiff was examined by defendant Dr. Michael Belin, Ophthalmologist, who referred Plaintiff to an optometrist for a new contact lens for the left eye. He also noted that if there was no improvement, Plaintiff should consider cornea transplant of the left eye.

27. On December 3, 2007, Plaintiff was returned to the Coxsackie (RMU) to see Ophthalmologist Dr. M. Belin. He once again recommended that Plaintiff be

fitted for new contact lenses and expressed his frustration about the delay in Plaintiff seeing the optometrist.

28.     On December 15, 2007, while housed in Great Meadow C.F., Plaintiff was examined by defendant Dr. Michael Celotti, Optometrist, whom, after a brief examination, recommended that Plaintiff be fitted for contact lenses at his office.

29.     On January 21, 2008, Plaintiff was taken to Eye Care Associates to be seen by the Optometrist Dr. M. Celotti, where he was fitted for new contact lenses, which would be dispensed to him at Great Meadow C.F.

30.     On February 23, 2008, new contact lenses were dispensed by defendant Dr. M. Celotti at the Great Meadow C.F.

31.     On March 29, 2008, Plaintiff was examined by Dr. M. Celotti, Opt., at Great Meadow C.F., for an evaluation of his contact lenses. Dr. Celotti noted that the right eye lens fit well, but that the left eye lens is a poor fit and needed to be re-ordered.

32.     In June of 2008, Plaintiff was transferred to Southport C.F.

33.     On July 22, 2008, Plaintiff was examined by defendant Optometrist Dr. Edward Berger, at the Southport C.F. Plaintiff explained that the left lens does not fit properly and was the wrong lens. Dr. Berger recommended that Plaintiff be seen by an Ophthalmologist at the Walsh (RMU) for a re-fitting.

34.     On August 27, 2008, Plaintiff was examined by defendant Optometrist Dr. David Girardi at Walsh (RMU), whom order new contact lenses. Dr. Girardi also noted that there was scarring on Plaintiff's eyes caused by ill-fitting contact lenses, and recommended that Plaintiff see a cornea specialist to consider a cornea transplant.

35.    On September 18, 2008, new contact lenses were dispensed at the Southport C.F. by defendant Dr. Edward Berger.

36.    On October 3, 2008, Plaintiff was transferred to Attica C.F.

37.    On October 20, 2008, Plaintiff wrote defendant Nurse Administrator Rouslin Killinger at Attica C.F., about pain in his eyes and extreme discomfort while wearing the contact lenses, and Plaintiff requested reasonable accommodations due to his inability to wear the contact lenses and having difficulty navigating around in a maximum security prison.

38.    On October 30, 2008, Nurse Administrator Killinger responded to Plaintiff's letter by giving an instruction to follow the sick call procedures, that he was scheduled for an outside clinic appointment, and that she had given his request for reasonable accommodations to medical records.

39.    On November 7, 2008, defendant Deputy Superintendent for Program Services, Sandra Dolce, responded that Plaintiff's request for reasonable accommodations were forwarded to medical for review.

40.    On November 10, 2008, Plaintiff turned over the contact lenses to security personnel.

41.    On November 11, 2008, Plaintiff was placed in medical isolation by defendant Dr. Jadow Rao, M.D., in light of the conditions of his eyes.

42.    On December 31, 2008, Plaintiff was taken to Wende Correctional Facility to be examined by Ophthalmologist defendant Dr. Jane Doe, whom recommended that Plaintiff be seen by Ophthalmology Services and a Cornea Specialist.

43. On February 24, 2009, security personnel informed Plaintiff that he had an appointed at the Erie County Medical Center, however, Plaintiff was unaware that an appointment was scheduled, and Plaintiff did not sign a contact for the trip. Plaintiff refused the trip because he feared for his safety.

44. On March 23, 2009, Plaintiff was examined at Attica C.F. by defendant Optometrist Dr. Weyand, whom recommended that he be evaluated for cornea transplant surgery.

45. On February 25, 2010, Plaintiff was transferred to Wyoming C.F.

46. On March 23, 2010, Plaintiff was taken to the Erie County Medical Center for an examination of his cornea by defendant Ophthalmologist Dr. Sandra Everett. Plaintiff explained to Dr. Everett that for the last ten-years, he's been having numerous problems with contact lenses, that he has been examined by numerous ophthalmologists and optometrists, that he has endured ill fitting contact lenses that are scarring his cornea and causing permanent damaged to his eyes. Plaintiff further explained that due to the level of care that he's receiving from medical personnel contracted by NYSDOCS, he cannot trust said personnel to do a cornea transplant.

47. In early May 2011, Plaintiff was transferred to Southport Correctional Facility.

48. On August 9, 2011, Plaintiff was examined at the Harrison Eye Center by defendant Dr. Abhishek Nemani, whom noted that Plaintiff was contact lens intolerant and offered transplant surgery. Plaintiff requested reasonable accommodations that were subsequently granted through Inmates' Grievance procedures.

49.  In September 2011, after Petitioner was declared legally blind and the granting of his request for reasonable accommodations, he was transferred to the Sensory Disability Unit at Eastern NY Correctional Facility.

50.  On January 13, 2012, Plaintiff was examined by the defendants Ophthalmologists Dr. Robert Eden and Dr. Swan, whom both recommended that he be fitted for new contact lenses. After a lengthy discussion with Dr. Eden and Dr. Swan, they informed Plaintiff that his cornea has a superficial ring and extensive scarring due to ill-fitting contact lenses that continuously irritate his eyes. Said Drs. also noted that it is permanent damage so severe from which they asked Plaintiff if he had surgery, which Plaintiff did not – as verified by their perusal of his medical file.

51.  On February 17, 2012, Plaintiff was examined and fitted for new contact lenses by defendant Dr. Wurzel, whom also noted the scarring on Plaintiff's right cornea caused by continuous irritation by ill-fitting contact lenses.

52.  On March 21, 2012, new contact lenses were dispensed by Dr. Wurzel.

53.  On April 5, 2012, plaintiff reported to sick call to report pain and irritation in his right eye, which he believes poorly fitted contacts is the cause.

The constitutional basis for this claim under 42 U.S.C. § 1983 is Prison Medical Personnel, Medical Personnel contracted by the New York State Department of Correctional Services [1] and Prison Officials' acts or omissions constituted deliberate indifference to the serious medical needs of Plaintiff and thus violated the 8th Amendment. The deprivation of medical treatment is sufficiently serious, meaning a condition of urgency that caused degeneration, extreme pain, and permanent damage to plaintiff's cornea and eyesight.

---

[1]    New York State Department of Correctional Services is now known as *New York State Department of Correctional Services and Community Supervision* (NYSDOCCS).

The relief that Petitioner is seeking for this claim is:

1.     Issue a declaratory Judgment stating that all defendant's violated the Plaintiff's rights under the 8th Amendment to the United States Constitution and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs.

2.     Defendant's failure to provide adequate Medical Care for the Plaintiff violated and continued to violate the Plaintiff's rights under the 8th Amendment to the United States Constitution.

3.     Award compensatory damages, and punitive damages.

4.     That the Court grant such and further relief as it may appear that Plaintiff is entitled.

5.     Jury Demanded.

### Exhaustion of Your Administrative Remedies for this Claim:

Did you grieve or appeal this claim? Yes [√ ]   No  [  ]

If yes, what was the result? <u>Three related Grievances were filed, denied and appealed.</u>

(Three [3] Grievances are attached)

**B.      SECOND CLAIM:** Plaintiff has and still has a "serious" eye disease (Keratoconus) which has damaged his eyesight beyond the New York State standards of being Legally Blind (20/200 ft.). Plaintiff has been diagnosed with this eye disease by a physician in 1999. The nature of this eye disease is a chronic progressive reformation of the Cornea, which only gets worse as time yields itself. Plaintiff was prescribed contact lenses on numerous occasions by the Department of Correctional Services' Health Department to correct his disabling eyesight. There is no other option for Plaintiff's eye condition besides Cornea transplant, as Eyeglasses are not an option.

Beginning on October 29th, 2008, defendants, David Paterson, Governor of the State of New York; Brian Fischer, Commissioner of the Department of Correctional Services; Lester N. Wright, Department of Correctional Services Chief Medical Officer, James T. Conway, Superintendent of Attica Correctional Facility, Sandra Dolce, Deputy Superintendent for Program Services, Attica C.F., Dr. Jadow Rao M.D., Attica C.F., Rouslin Killinger, Nurse Administrator, Attica C.F., Dr. Jane Doe, Ophthalmologist, Wende C.F., G. Strubel, Inmate Grievance Supervisor, Attica C.F., Mark Jones, Inmate Grievance Supervisor, Attica C.F., David Unger, Superintendent, Wyoming C.F., Carol Edwards, Deputy Supt Programs, Wyoming C.F., Gregory Mohring, Nurse Administrator, Wyoming C.F., Suzanne Jacobs, Director, Sensory Disability Unit (SDU) Wyoming C.F., Bryan Bradt, Staff, Sensory Disability Unit (SDU) Wyoming C.F., S. Durfee, Deputy Supt. Administration, Wyoming C.F., Dr. Bozer, Primary Healthcare Provider, Wyoming C.F., M. Sheahan, Acting Superintendent Southport C.F., did the following to Plaintiff while incarcerated by the New York State Department of Correctional Services (NYSDOCS) at Attica Correctional Facility, Wyoming Correctional Facility, Southport Correctional Facility, denied Plaintiff Reasonable Accommodations.

1.   On October 29, 2008, Plaintiff wrote a complaint to Attica Correctional Facility' Nurse Administrator Rouslin Killinger. Plaintiff informed Defendants of his eye condition and that the medical treatment prescribed (contact lenses) was causing pain, discomfort and possibly more injury/damage to his eyes. Plaintiff informed defendant Killinger that he couldn't wear the lenses anymore due to the reason stated above.

2.   Defendant Rouslin Killinger responded the next day and verified that Plaintiff was on the list to see clinician from a previous request.

3.      On November 2, 2008, Plaintiff wrote the Attica C.F. Deputy Supt. for Program

Services, Sandra Dolce, informing the defendant of Plaintiff's serious medical

need. Plaintiff also asked the defendant to send Plaintiff a New York State

Department of Corrections' "Inmate with Sensorial Disability Form" (D.O.C.S.

Directive No. 2612), to request Reasonable Accommodations. Defendant did not

send said form.

4.      On November 2, 2008, plaintiff wrote the Chief Medial Officer of NYSDOCS,

Lester Wright, and informed the defendant of his serious medical needs at the

Attica C.F.

5.      On November 6, 2008, Plaintiff submitted an "Inmate with Serious Disability"

form to defendant Sandra Dolce in accordance with procedure, requesting

"Reasonable accommodation." Said request, Large Print, Orientation and

Mobility Instruction, Mobility Assistants/Sighted Guide, Braille Print, Braille

Equipment, Transfer to Special Needs Unit.

6.      Defendant Sandra Dolce acknowledged Plaintiff's request the following day

(11/7/08), and stated upon review of the Attica Medical Staff, she would render a

determination.

7.      On November 10, 2008, Plaintiff did turn the right contact lens over to the Attica

C.F.' SHU Corrections Officer.

8.      On November 11, 2008, Plaintiff was placed on medical hold (isolation) in Attica

C.F.' Infirmary by, upon information and belief, defendant Dr. Jadow Rao.

9.  Plaintiff was then interviewed by defendant Rouslin Killinger on or about November 16, 2008, inside the Infirmary, Plaintiff continued to relay his medical conditions.

10. Plaintiff's "Inmate with Sensorial Disability" request form was signed by defendant Rouslin Killinger under the section medical verification, of Plaintiff's request on November 17, 2008. It is unclear whether defendant Rouslin Killinger actually reviewed Plaintiff's medical file, since the request form was not marked under the section which defines the Plaintiff's disability.

11. Attica C.F. Deputy Supt. of Program Services, Sandra Dolce, denied Plaintiff's request on November 19, 2008, without the adequate review of Plaintiff's disability. Defendant Rouslin Killinger never defined Plaintiff's condition, as required by NYSDOCS' Directive No.: 2612.

12. Plaintiff then appealed this determination to Attica C.F.' Superintendent, James T. Conway on November 24, 2008.

13. Upon information and belief, Defendant Sandra Dolce was defendant James T. Conway' designee for to handle the appeal of the denial of the request for "Reasonable Accommodations" by Plaintiff.

14. Defendant Sandra Dolce interviewed Plaintiff on November 26, 2008, inside the Attica C.F. Infirmary, where Plaintiff had been placed in an isolated cell on medical hold on November 11, 2008.

15. Defendant Sandra Dolce was now informed by Plaintiff informally of his current medical condition, which she stated Plaintiff would see an Ophthalmologist, and

any change in condition, that she (Sandra Dolce) would consider it for review. Defendant then did deny Plaintiff's request again on December 2, 2008.

16.    On December 8, 2008, plaintiff filed a Grievance upon the denial of the Reasonable Accommodation request, still explaining his disabling condition.

17.    December 17, 2008, the Attica C.F. Grievance Supervisor G. Strubel and Mark Jones denied Plaintiff's Grievance, which Plaintiff then appealed to the defendant James T. Conway on December 23, 2008.

18.    Defendant James T. Conway then denied the Grievance on December 31, 2008, which Plaintiff then appealed to the Albany Central Office Review Committee (C.O.R.C.) on January 2, 2009.

19.    Upon information and belief Plaintiff's appeal to the Albany C.O.R.C. was destroyed by Attica's Infirmary staff, due to the fact that Plaintiff never received a response from Albany' (C.O.R.C.).

20.    Also on December 31, 2008, Plaintiff was sent to Wende C.F. to be examined by Ophthalmologist Dr. Jane Doe, who was deliberate indifferent to Plaintiff's medical needs.

21.    Upon information and belief, Plaintiff believes that defendant Rouslin Killinger told defendant Dr. Jane Doe to be deliberate indifferent to Plaintiff's eye condition. It was brought to Plaintiff's attention by defendant Rouslin Killinger that she worked with defendant Dr. Jane Doe at Wende C.F. Defendant Rouslin Killinger informed Plaintiff that she and defendant Dr. Jane Doe were good friends and that defendant Dr. Jane Doe had given her medical treatment in the past.

22.    Plaintiff then wrote Inmate Grievance Clerk on January 21, 2009, asking for confirmation that the appeal to C.O.R.C. was received, but Plaintiff never received a response.

23.    Plaintiff then wrote an outside agency to try and gain help on January 29, 2009.

24.    Plaintiff then filed another Unlawful Discrimination Complaint on February 1, 2009, which he never received a response from the Attica C.F. Grievance Office. Plaintiff also requested the Grievance Clerk to give confirmation of the receipt of his past Complaint and Grievance 545551-08. No response came.

25.    On February 24, 2009, Plaintiff refused to go on an outside medical trip which was alleged to be a medical trip to an outside Ophthalmologist. However, Plaintiff refused due to a deviation from protocol, the Plaintiff never signed a contract for the outside trip, which is standard operation procedure. Plaintiff also addressed safety concerns in a letter written to then Governor David Patterson's Office, and the Commissioner of the Department of Correctional Services defendant Brian Fischer, regarding leaving Attica C.F. with armed security personnel, fearing unlawful retaliation by the Attica C.F.' Administration for failing to address Plaintiff's serious medical needs.

26.    On February 24, 2009, defendant Lester N. Wright, NYSDOCS Chief Medical Officer respond to Plaintiff's letter to Defendant Brian Fischer, Commissioner, NYSDOCS. Defendant Lester N. Wright stated that Plaintiff's health concerns had been investigated by the Division of Health Services, and that Plaintiff would see a specialist in the near future for evaluation.

27.   Plaintiff was then released into the general population of Attica C.F. the next day
      (February 25, 2009) in his current medical state of legal blindness. Upon
      information and belief, by defendant Dr. Jadow Rao, who was deliberately
      indifferent to plaintiff's health and prison conditions.

28.   On March 17, 2009, defendant Lester N. Wright responded to Plaintiff's
      complaints made to the then Governor of the State of New York David Patterson,
      stating almost verbatim the exact words of his February 24, 2009, response.

29.   Plaintiff wrote defendant James T. Conway on March 19, 2009, expressing his
      medical concerns and that his eyesight was below the New York State standard of
      being legally blind. Defendant James T. Conway responded on March 23, 2009,
      still being deliberately indifferent to Plaintiff' conditions.

30.   Plaintiff filed yet another Unlawful Discrimination Complaint (No.: 55142-09)
      on April 14, 2009, expressing his health concerns and conditions.

31.   The complaint was responded to on April 24, 2009, by the Inmate Grievance
      Review Committee, whom denied the action requested, and then Plaintiff
      appealed to Attica C.F.' Supt. defendant James T. Conway.

32.   Still being deliberately indifferent to Plaintiff's health and prison conditions,
      defendant James T. Conway again denied the Plaintiff's Grievance on May 5, 2009.

33.   Plaintiff then appealed the Attica C.F.' Supt. defendant James T. Conway's denial
      of Grievance No. 55142-09 to Albany C.O.R.C. on May 7, 2009, which was
      received on May 18, 2009.

34.   The Albany C.O.R.C. unanimously accepted the Superintendent's denial of
      Plaintiff's Grievance on June 10, 2009.

35. Plaintiff remained in the general population of Attica C.F. from February 25, 2009, in his current medical state of legal blindness until transferred to Wyoming Correctional Facility on February 24, 2010.

36. On March 1, 2010, Plaintiff wrote defendants David Unger, Superintendent, Gregory Mohring, Nurse Administrator, informing them of his eye condition and recent denial of Reasonable Accommodations at Attica C.F. Plaintiff also respectfully conveyed that he intend to hold the Wyoming C.F.' Superintendent and Wyoming Medical service liable for any harm that is inflicted upon Plaintiff at that facility.

37. On March 23, 2010, I was taken to the Erie County Center to be examined by Dr. Sandra Everett, Ophthalmologist, and Dr. Everett conducted a cornea evaluation. Plaintiff explained to the doctor that for the last ten years, he's having numerous problems with contact lenses. Plaintiff further conveyed to Dr, Everett that he has been examined by numerous ophthalmologists and optometrists, and is enduring ill-fitting contact lenses which are scaring his cornea and causing permanent damage. Plaintiff moreover explained that due to the level of care that he has been receiving from medical personnel contracted by NYSDOCS, he cannot trust said personnel to do a cornea transplant.

38. On March 24, 2010, Plaintiff filed a Reasonable Accommodations request with a Sensory Disability Unit staff member defendant Bryan Brandt of Wyoming C.F.

39. On March 30, 2010, Deputy Supt. of Program Services of Wyoming C.F. defendant Carol Edwards, denied Plaintiff's Reasonable Accommodations request.

40.    On April 1, 2010, Plaintiff appealed the denial of the request for Reasonable Accommodations at Wyoming C.F. to defendant David Unger, Superintendent of Wyoming C.F.

41.    On April 7, 2010, Wyoming C.F. defendant Superintendent David Unger's designee, Wyoming C.F.' Deputy Supt. of Administration defendant S. Durfee, denied Plaintiff's appeal for Reasonable Accommodations.

42.    On April 9, 2010, Plaintiff declined prescribed contact lenses due to the pain and discomfort they caused.

43.    In June of 2010, while incarcerated at Wyoming C.F., Plaintiff was placed in a housing unit in the rear of the facility that proved to be an unsafe area due to the requirement of Plaintiff having to walk close to vehicular traffic.

44.    On July 13, 2010, Plaintiff made a formal request to defendant Nurse Administrator Gregory Mohring, requesting that he be moved to a safer place of the facility, and suggested a housing unit in front of the facility.

45.    On July 15, 2010, defendant Nurse Administrator Gregory Mohring denied Plaintiff's request to move.

46.    On August 1, 2010, Plaintiff reiterated a request to be moved to a safer place of the facility to Nurse Administrator defendant Gregory Mohring.

47.    On November 21, 2012, defendant Dr. P. Bozer ordered Plaintiff's move to the front of the facility (West Compound).

48.    On December 1, 2010, Dr. Weyland of Wyoming C.F. recommended that Plaintiff receive Reasonable Accommodations.

49.   On December 16, 2010, Plaintiff filed another request for Reasonable Accommodations with Wyoming C.F.' Sensory Disability Unit (SDU) Director defendant Suzanne Jacobs.

50.   Plaintiff's request was forwarded to defendant Nurse Administrator defendant Gregory Mohring, and again he failed to put in medical verification.

51.   On December 20, 2010, Wyoming C.F.' Deputy Supt. of Programs, defendant Carol Edward, denied Plaintiff's request for Reasonable Accommodations.

52.   On December 22, 2010, Plaintiff appealed that decision to Wyoming C.F.' Superintendent defendant David Unger.

53.   On Jahuary 3, 2011, Wyoming C.F.' Superintendent defendant David Unger designated Wyoming C.F.' Deputy Supt. of Administration defendant S. Durfee, to hear Plaintiff's appeal, and Reasonable Accommodations were denied.

54.   In early May 2011, Plaintiff was transferred to Southport Correctional Facility.

55.   In July 2011, Plaintiff filed a Medical Discrimination Complaint (Grievance No. SPT-51913-11) regarding the denial of Reasonable Accommodations due to his legally blindness.

56.   On August 4, 2011, the Grievance Complaint was denied by the Inmate Grievance Resolution Committee (I.G.R.C.).

57.   On August 9, 2011, Plaintiff appealed the I.G.R.C. decision to defendant, Acting Superintendent, M. Sheahan, he upheld the I.G.R.C.'s denial of the Grievance Complaint.

58.   On August 12, 2011, Plaintiff appealed the Acting Superintend, defendant M. Sheahan's, denial of Grievance No. SPT-51913-11.

59. On November 9, 2011, Plaintiff's appeal was unanimously accepted in part by the C.O.R.C. in so much that Reasonable Accommodations were granted after nearly three-years of being denied Reasonable Accommodations.

60. In September 2011, after Plaintiff being declared legally blind and the granting of his request for Reasonable Accommodations, he was transferred to the Sensory Disability Unit at Eastern NY Correctional Facility.

**The constitutional basis for this claim under 42 U.S.C. § 1983 is:** Prison Medical Personnel, Medical Personnel contracted by the New York State Department of Correctional Services,[2] Prison Officials' acts or omissions constituted deliberate indifference to the serious medical needs of the Plaintiff and thus violated the 8th Amendment. The deprivation of Reasonable Accommodations is sufficiently serious, meaning a condition of urgency that caused degeneration, extreme pain, and unsafe conditions. A Reasonable Accommodation is one that gives the otherwise qualified Plaintiff with disabilities meaningful access to programs or services sought.

**The relief I am seeking for this claim is:** Issue a declaratory judgment stating that all defendant's violated the Plaintiff's rights under the 8th Amendment of the United States Constitution and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs due to the denial of Reasonable Accommodation for three (3) years.

1. Defendants' failure to provide adequate Medical Care (Reasonable Accommodations) for the Plaintiff violated and continued to violate the Plaintiff's rights under the 8th Amendment of the United States Constitution.

---

[2] New York State Department of Correctional Services is now known as New York State Department of Corrections and Community Supervision.

2.    Award compensatory and punitive damages.

3.    That the Court grant such other and further relief as it may appear that

Plaintiff is entitled.

4.    Jury Demand.

### Exhaustion of Your Administrative Remedies for this Claim:

Did you grieve or appeal this claim?    Yes __✓__    No ____

If yes, what was the result?    Three related grievances were filed, denied, and appealed.

(Three [3] Grievances are attached).

I declare under the penalties of perjury that the foregoing is true and correct.

Executed on __May 25, 2012_____
(date)

*Darnell Cummings*
Darnell Cummings, Plaintiff