UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARNELL CUMMINGS,

                    Plaintiff,

        v.                                          **DECISION AND ORDER**

                                                    12-CV-618S

DAVID PATERSON, et al.,

                    Defendants.

# I.      Introduction

This is a civil rights action (under the Eighth and Fourteenth Amendments and the Americans with Disabilities Act, 42 U.S.C. § 121132, "ADA") commenced by Plaintiff (initially pro se while he was an inmate in New York State prisons) alleging deliberate indifference to his medical condition from 1999 (when he was diagnosed with keratoconus) to 2012.  Plaintiff alleges that from 2008-2011 Defendants (the New York State Department of Corrections and Community Supervision (hereinafter "DOCCS," then known as the Department of Correctional Services or "DOCS," see Docket No. 1, Compl. at page 15 n.1); its officials and employees; and medical consultants) failed to address his eye condition and did not afford him reasonable accommodation for his diminished vision.

Before this Court is the Motion for Summary Judgment (Docket No. 77) by what will be called the "State Defendants," DOCCS and the remainder of appearing Defendant DOCCS employees and officials.

For the reasons stated herein, this Motion for Summary Judgment (Docket No. 77) is granted in part (dismissing Plaintiff's deliberate indifference claims), but denied in part (retaining for trial his ADA claims).

## II.    Background

As summarized in Defendants' Motion for Summary Judgment memorandum (Docket No. 77, Defs. Memo. at 1), "Plaintiff allegedly suffers from keratoconus, a progressive eye disease in which the cornea thins and begins to bulge into a cone-like shape, causing distorted vision."   During his term as an inmate of Defendant DOCCS, Plaintiff claims that certain Defendants "knew of his serious medical condition yet deliberately denied him treatment for that condition, thus violating his rights under 42 USC § 1983.  He also claims that DOCCS deprived him of reasonable accommodations for his condition, thus violating his rights under the Americans with Disabilities Act (ADA)" (id.). From an Order (Docket No. 11) on Plaintiff's motion for leave to amend the Complaint (see Docket No. 9), this Court noted that Plaintiff alleged denial of adequate medical treatment for his keratoconus from 1999, when he was first diagnosed, to 2012 (Docket No. 11, Order of Oct. 15, 2013, at 1).

As described by Plaintiff's expert, keratoconus

"is characterized by a progressive steepening and thinning of the corneas transforming the geometry from that of a sphere to that of a cone.  The subsequent distortion results in increasing astigmatism and myopia causing loss of visual acuity, blurred vision, light sensitivity with associated discomfort.  The initial treatment involves the fitting of spectacles and when they no longer provide visual rigid contract lenses.  In these instances, if the contact lenses are not fitted properly and refitted frequently scarring of the underlying thinned cornea is accelerated resulting in further loss of vision, irritation, and pain which exacerbates to the point that contact lenses maybe contraindicated.  Under these circumstances without the benefit of optical correction the subject is rendered functionally blind."

(Docket No. 83, Dr. James Aquavella Expert Aff., Ex. A, Expert Report at 2).

From 2008 until 2011, Plaintiff requested reasonable accommodations and appealed denials in a series of grievances. Each grievance was denied, and his appeals therefrom rejected. (Docket No. 1, Compl. at pages 22-26.) In 2015, Plaintiff was released from DOCCS incarceration. This Court will cite to the Complaint and the factual allegations asserted in the summary judgment motion (not disputed by the parties).

A. Individual Defendants

Representing himself before this Court, Plaintiff filed a Complaint naming DOCCS, then-Governor David Paterson, and thirty-six other officials and employees of DOCCS or medical staff at consultative facilities that treated Plaintiff (Docket No. 1, Compl.). Plaintiff named as Defendants "what appeared to be each and every medical provider, both outside medical providers and employees of" DOCCS who treated him at some time during his incarceration (Docket No. 11, Order at 1-2).

Plaintiff moved for leave to proceed in forma pauperis (Docket No. 2) which was granted (Docket No. 4) with some claims and some named Defendants dismissed (Docket No. 4). Plaintiff moved for leave to amend his Complaint (Docket No. 9). The second Order on leave to amend the Complaint (Docket No. 11) ordered service upon State Defendants David Unger, Carol Edwards, Gregory Mohring, Suzanne Jacobs, Bryan Bradt, Sandra Durfee, Dr. Paula Bozer, Michael Sheahan, Dr. Robert Eden, Dr. David Weyand, and Dr. Richard Wurzel as well as Defendants Dr. Sandra Everett, Dr. Abhishek Nemani, and Dr. Swan, DOCCS's consultative medical staff (id. at 10; see Docket No. 18, Ans. of State Defs. at 1 & nn.2-6).

The New York State Attorney General answered for DOCCS and eleven of the remaining Defendants (the "State Defendants"), save Drs. Everett, Nemani, and Swan (Docket No. 18, Ans. of State Defendants, at 1 & n.1). The Attorney General asserts that these three doctors have not been served and had not sought representation by the New York State Office of Attorney General (id.; see also Docket Nos. 22, 30 (Order of Apr. 9, 2015, extending time for service on Drs. Everett and Nemani, and granting Plaintiff leave for discovery about Dr. Swan), 32 (Summons return unexecuted as to Dr. Everett), 34 (Summons return executed on Dr. Everett), 44 (Summons return unexecuted as to Dr. Nemani)). This Decision does not address these three, non-appearing and non-moving Defendants.

In 2008, Plaintiff was placed in the infirmary at the Attica Correctional Facility ("Attica") for three months (until February 24, 2009) due to his claimed eye condition and then was assigned to general population allegedly without any reasonable accommodation for his condition (Docket No. 1, Compl. at pages 18, 22; Docket No. 83, Pl. Aff. ¶ 22(a)). He alleges that Defendants there denied his requests for reasonable accommodations of his eye condition until February 24, 2010, when he was transferred to Wyoming Correctional Facility ("Wyoming") (Docket No. 83, Pl. Aff. ¶ 22(a)). Plaintiff remained at Wyoming until transferred to Southport Correctional Facility ("Southport") in May 2011 (id.).

Plaintiff lists three requests for reasonable accommodations that he eventually grieved (id. ¶¶ 20-22; Docket No. 1, Compl. at pages 17-26; see generally Docket No. 83, Pl. Atty. Decl. ¶ 26, Ex. 24).

1. Attica Correctional Facility (November 2008 to February 2010)

On November 6, 2008, Plaintiff while at Attica requested reasonable accommodations for his eye condition (Docket No. 1, Compl. at page 18; Docket No. 83, Pl. Aff. ¶¶ 19-20, 25; Docket No. 83, Pl. Counterstatement ¶ 21; Docket No. 83, Pl. Atty. Decl. ¶ 26, Ex. 24), the first of his three requests for accommodations (Docket No. 83, Pl. Aff. ¶ 19). He later filed his grievance from the denial of the first request on April 14, 2009 (Docket No. 1, Compl. at page 22).

On November 11, 2008, Defendants placed Plaintiff in infirmary on medical hold (Docket No. 1, Compl. at page 18; see also Docket No. 83, Pl. Aff. ¶ 20). He remained in the infirmary until discharged into Attica's general population on February 24, 2009 (Docket No. 83, Pl. Aff. ¶ 22(a)). On December 8, 2008, Plaintiff filed a grievance, which was denied (Docket No. 1, Compl. at page 20). He appealed that denial to Superintendent James Conway who also denied the grievance (id.). Plaintiff alleges that infirmary staff destroyed his appeal to Albany Central Office Review Committee ("Albany C.O.R.C.") because Plaintiff did not get any response to his appeal (id. at 20, 21).

Meanwhile, Defendants assigned Plaintiff to Attica's general population from February 24, 2009, until his transfer to Wyoming Correctional Facility on February 24, 2010 (Docket No. 1, Compl. at page 23; Docket No. 83, Pl. Aff. ¶ 22(a)). Defendant optometrist Dr. Weyand examined Plaintiff on March 23, 2009, and Dr. Weyand recommended Plaintiff be evaluated for cornea transplant surgery (Docket No. 1, Compl. at page 14).

On April 14, 2009, Plaintiff grieved denial of his request for reasonable accommodations (id. at page 22) and that grievance was denied, and Plaintiff sought

review by the Inmate Grievance Review Committee ("IGRC") which also denied. Plaintiff then appealed to Superintendent Conway (id.) Conway denied the grievance on May 5, 2009 (id.) Plaintiff appealed to Albany C.O.R.C. on May 7, 2009, which accepted the Superintendent's decision on June 10, 2009 (id.).

### 2. Wyoming Correctional Facility (February 2010 to May 2011)

After his transfer to Wyoming, Plaintiff filed requests for reasonable accommodation there (id. at pages 23-25). The second request and the grievance therefrom were pending when Plaintiff was transferred to Southport (id.).

On March 24, 2010, Plaintiff filed this second request for reasonable accommodation to sensory disability unit staff member Bradt (Docket No. 1, Compl. at page 23; Docket No. 83, Pl. Counterstatement ¶ 22(a)(vii); Docket No. 83, Pl. Aff. ¶¶ 19-20, 25), which was denied by Defendant Carol Edwards on March 30, 2010 (Docket No. 1, Compl. at page 23; Docket No. 83, Pl. Aff. ¶ 22(a)(iii)). Plaintiff unsuccessfully appealed this denial by Defendant Durfee as designee of Defendant Superintendent Unger (Docket No. 1, Compl. at page 24).

In June 2010, Plaintiff was assigned to a housing unit at the rear of Wyoming that he claimed was unsafe due to having to walk close to vehicular traffic (id.). On July 13, 2010, he requested Defendant Nurse Administrator Gregory Mohring to be relocated to a safer unit but Mohring denied that request (id.). He applied again in August 1, 2010, to Mohring (id.). Defendant ophthalmologist Bozer ordered Plaintiff's move to the front of the facility (Id.), finding that Plaintiff was intolerant to contact lenses and his visual acuity was deteriorating (Docket No. 83, Pl. Aff. ¶ 22(a)(iv)). Defendant Dr. Weyland also

recommended Plaintiff receive reasonable accommodations (Docket No. 1, Compl. at page 24).

On December 16, 2010, Plaintiff filed another request for reasonable accommodations with the sensory disability unit director, Defendant Suzanne Jacobs (id. at page 25; Docket No. 83, Pl. Counterstatement ¶ 22; Docket No. 83, Pl. Aff. ¶¶ 19-20, 25). Carol Edwards and later the designee of the Superintendent Defendant Unger (Defendant Durfee) denied this request (Docket No. 1, Compl. at page 25).

3. Southport (May 2011 to November 2011), Eastern Correctional Facilities (after November 2011)

Plaintiff was transferred to Southport in May 2011 (id.). Plaintiff filed his third grievance here on July 2011 (id. at pages 25-26).

In July 2011, Plaintiff filed another grievance regarding denial of reasonable accommodations (id.). The IGRC denied this grievance on August 4, 2011 (id.). On August 9, 2011, Plaintiff appealed to the Acting Superintendent, Defendant Sheahan, who upheld the denial (id.). On August 12, 2011, Plaintiff appealed Sheahan's denial (id. at pages 25-26). On November 9, 2011, Plaintiff's appeal was accepted in part by the Albany C.O.R.C., granting reasonable accommodations (id. at page 26).

Meanwhile, on September 2011, Plaintiff was declared legally blind and was transferred to the Sensory Disability Unit at the Eastern Correctional Facility (id.; Docket No. 83, Pl. Aff. ¶ 25).

Plaintiff argues that more than three years were expended before Defendants provided reasonable accommodation to Plaintiff (Docket No. 83, Pl. Aff. ¶¶ 21, 25; Docket No. 83, Pl. Counterstatement ¶ 23).

Plaintiff contends that in January 2012, Dr. Eden, an ophthalmologist recommended that Plaintiff get new contact lenses and found that his eyes were permanently damaged (Docket No. 83, Pl. Aff. ¶ 22(c); <u>see</u> Docket No. 1, Compl. at page 15). Optometrist Wurzel created plans for treatment in 2012 and 2013 (Docket No. 83, Pl. Aff. ¶ 22(b); <u>see</u> Docket No. 1, Compl. at page 15).

### B. Proceedings after Filing the Complaint

In the State Defendants' Answer (Docket No. 18), they asserted that Plaintiff failed to state a claim (<u>id.</u> ¶ 5), denying they acted without malice (<u>id.</u> ¶ 6). They denied personal involvement for Plaintiff to assert a § 1983 claim (<u>id.</u> ¶ 11). They also denied <u>respondeat superior</u> applies here (<u>id.</u> ¶ 12). They finally denied that claims under the Americans with Disabilities Act do not lie against individual defendants (<u>id.</u> ¶ 25).

Plaintiff later was released on parole from incarceration at a DOCCS facility and relocated to Georgia (Docket No. 42).

This case was referred to Magistrate Judge Hugh Scott (Docket No. 19; <u>see also</u> Docket No. 89, referral to Magistrate Judge Kenneth Schroeder, Mar. 4, 2021) who issued a Scheduling Order (Docket No. 20) and amended it either due to service issues or at the requests of counsel (Docket Nos. 21, 31, 46, 52, 53, 54, 56, 58, 61, 70, 71, 76). Magistrate Judge Scott appointed <u>pro bono</u> counsel for Plaintiff (Docket No. 41). Kevin Hogan was appointed as mediator and conducted mediation sessions with the parties (Docket Nos. 46, Third Amended Scheduling Order, 49, 50).

C. State Defendants' Motion for Summary Judgment (Docket No. 77)

Defendants then moved for summary judgment (Docket No. 77[1]). Responses initially were due by January 10, 2020 (Docket No. 78). After motions to extend the briefing schedule (Docket Nos. 79, 81 (motions), 80 (initial extension Order)), responses then were due by January 31, 2020, and replies by February 14, 2020 (Docket No. 82). Plaintiff then filed his timely response (Docket No. 83[2]). Defendants filed a timely reply (Docket No. 85), asserting (in part) that the exhibits attached to Plaintiff's attorney declaration are inadmissible hearsay (Docket No. 85, Defs. Reply Memo. at 3-4). Plaintiff sought leave to file sur-reply papers (Docket No. 86), which was granted (Docket No. 87). Plaintiff filed his attorney's sur-reply declaration, arguing that the medical records he submitted were admissible (Docket No. 88). Upon these submissions, this Court determined oral argument was unnecessary and the motion was deemed submitted.

### III. Discussion

A. Applicable Standards

1. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under governing law,"

---

[1] In support of their motion, moving Defendants submitted their Statement of Material Facts; Memorandum of Law; and defense counsel's Declaration with exhibit, portions of Plaintiff's deposition transcript, Docket No. 77.

[2] In opposition, Plaintiff submits his Affidavit; his response to Defendants' Statement and Counterstatement; the affidavit of expert Dr. James Aquavella, and his expert report; and his Memorandum of Law, Docket No. 83. Dr. Aquavella opined the keratoconus can worsen if contact lenses are not continually refitted, Docket No. 83, Aff. of Dr. Aquavella, Ex. A, Expert Report at 2-3. He also faulted DOCCS's delayed finding of legal blindness, id. at 3-4.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted). Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact,"

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

Motions for summary judgment are supported by admissible evidence, Fed. R. Civ. P. 56(c)(2); Rosseter v. Annetts, No. 9:10-CV-1097, 2012 WL 4486082, at *3 n.3 (N.D.N.Y. June 29, 2012) (citing Major League Baseball Props., Inc. v. Salvino, 542 F.3d 290, 309 (2d Cir. 2008)).  The court in Rosseter reminds that "hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  Fed. R. Evid. 802. Medical and prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule," 2012 WL 4486082, at *3 n.3; Fed. R. Evid. 803(6), with the qualifications and authenticity of the record either shown by the

custodian of the records or by certification that complies with Federal Rule of Evidence 902, Fed. R. Evid. 803(6)(D); see Rosseter, supra, 2012 WL 4486082, at *3 n.3.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Absent such an opposing statement, the facts alleged by the movant are deemed admitted. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

### 2. Deliberate Indifference to Medical Condition

Under the Eighth Amendment, "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The Supreme Court in Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), observed

> "'After incarceration, only the "'unnecessary and wanton infliction of pain'" . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' Ingraham v. Wright, supra, [430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)] (quoting Estelle v. Gamble, supra, 429 U.S., at 103, 97 S.Ct., at 290) (citations omitted). To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."

Further, "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock," id.

To assert a 42 U.S.C. § 1983 claim for violation of an inmate's rights under the Cruel and Unusual Punishment Clause for deliberate indifference to his medical condition due to inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2904, 49 L.Ed.2d 859 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). Deliberate indifference includes doctors' response to an inmate's needs or guards denying or delaying care, Estelle v. Gamble, supra, 429 U.S. at 104-05.

"To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104). Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972). "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm," Hathaway, supra, 37 F.3d at 66.

This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official acted with sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66. "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).

For the subjective component, Plaintiff needs to show Defendants acted "with a sufficiently culpable state of mind," Hathaway, supra, 37 F.3d at 66.

> "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference,'"

Chance v. Armstrong, 143 F.3d 698, 702, 703 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Mere disagreement with proper treatment, however, does not create a constitutional violation and mere negligence (even malpractice) by itself does not state a constitutional claim, id. at 703; Long v. Annucci, No. 9:17CV916, 2018 WL 4473404, at *9 (N.D.N.Y. July 29, 2018) (Wiley Dancks, Mag. J.) (citing cases). Malpractice, however, that "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm'" rises to the level of constitutional deliberate indifference, Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted); Chance, supra, 143 F.3d at 703. Plaintiff feeling that he did not get the level of medical attention deserved or his preference for alternative treatment also do not support constitutional claims, Long, supra, 2018 WL 4473404, at *9.

### 3. Individual Liability for Civil Rights Violation

To hold individuals liable for damages for violating Plaintiff's civil rights, Plaintiff needs to establish their personal involvement, Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1979); Gill v. Mooney, 824 F.2d 447, 449 (2d Cir. 1987) (Docket No. 85, Defs. Reply Memo. at 6). Plaintiff must show that the individual defendant (1) directly participated in the violation, (2) failed to remedy the violation after notification of the violation, (3) instituted a policy or custom which permitted the violation to occur, or allowed to occur, (4) acted in a manner constituting gross negligence in management of subordinates, or (5) exhibiting deliberate indifference by failing to act on information that unconstitutional acts were occurring, Colon, supra, 58 F.3d at 873; Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (id. at 6-7). Absence such involvement, Defendants cannot be liable, Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (id. at 7).

### 4. Americans with Disabilities Act, 42 U.S.C. § 121132

Americans with Disabilities Act precludes exclusion of qualified individual with a disability from participation in or denial of benefits of services, program, or activities of a public entity due to the individual's disability, 42 U.S.C. § 121132 (Docket No. 83, Pl. Memo. at 11). DOCCS has been recognized as a public entity governed by the ADA, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (id.); see Alster v. Goord, 745 F. Supp. 2d 317, 338 (S.D.N.Y. 2010) (defendant concedes DOCCS is a public entity under ADA). Courts have held that

> "In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that

the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."

Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003); Alster, supra 745 F. Supp. 2d at 338 (Docket No. 83, Pl. Memo. at 11-12).

A disability under the Act "is defined to include '(A) a physical or mental impairment that substantially limits one or more of the major life activities * * *; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' 42 U.S.C. § 12102(2)," Gerace v. Cliffstar Corp., No. 05CV65, 2007 WL 9777687, at *3 (W.D.N.Y. Oct. 5, 2007) (Elfvin, J.). Using Equal Employment Opportunity Commission regulations as a guide, major life activities include seeing, see 29 C.F.R. § 1630.2(i)(1).

The ADA creates an affirmative duty on the public entity to provide reasonable accommodations for the disabled, Henrietta D., supra, 331 F.3d at 276-76 (id. at 12). Since DOCCS is the real party in interest, there are no claims against individuals in their official capacity, Webb v. Arnone, No. 3:17CV01624(SRU), 2018 WL 3651333, at *8 (D. Conn. Aug. 1, 2018) (no individual capacity liability under ADA, while official capacity liability exists only when plaintiff establishes a constitutional violation with the ADA violation) (id.).

### 5. Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Saucier had required this Court first to consider the constitutional question, then consider the qualified immunity

question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), overruled Saucier on this point; instead district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 196 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity."  Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).  The existence of the right is based upon recognition by the Supreme Court or the Second Circuit, Doe v. Phillips, 81 F.3d 1204, 1211 (2d Cir. 1996), and that right needed to be clearly established at the time of the incident to preclude immunity, see Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (see Docket No. 85, Defs. Reply Memo. at 8); Anderson, supra, 483 U.S. at 641.

B.  Contentions

First, Defendants argue that Plaintiff admitted that he did not know what several of the individual Defendants did to violate his rights, thus failing to establish claims against them (Docket No. 77, Defs. Memo. at 1-7, 11), see Hardy v. LoVerde, No. 09CV217, 2013 WL 951380, at *3 (W.D.N.Y. Mar. 12, 2013) (Skrenty, C.J.).  Defendants argue that

Plaintiff failed to allege State Defendants Unger, Edwards, Mohring, Jacobs, Bradt, Durfee, Bozer, Sheahan, Dr. Eden, Dr. Weyand, and Wurzel had any role in depriving him of treatment or mishandling his eye condition (Docket No. 77, Defs. Statement ¶¶ 1-11; id. Defs. Memo. at 1-7). They contend that Plaintiff failed to link any pain he suffered with an action (or inaction) of any Defendant (Docket No. 77, Defs. Memo. at 10-11).

Plaintiff asserts that each had a role in denying him reasonable accommodations for his eye condition (Docket No. 83, Pl. Aff. ¶ 22; see Docket No. 83, Pl. Atty. Decl. ¶ 25).

Plaintiff counters that he asserts sufficient material to raise issues of material fact for his deliberate indifference and ADA claims (Docket No. 83, Pl. Memo. at 6, 7 n.3, 11-14). His eye condition was sufficiently serious from Plaintiff's pain and discomfort from ill fitting contact lenses, as documented in his DOCCS medical records of deterioration (id. at 6-7). Plaintiff was denied reasonable accommodations for his eye condition for over three years in the delay of finding that he was legally blind (id. at 7 n.3, 11-14). He argues that individual Defendants were personally involved in his case, with Defendants Unger, Durfee, Mohring, Jacobs, and Sheahan conducting supervision at the facilities housing Plaintiff and rejecting his applications and grievances (id. at 9).

Plaintiff next contends that he asserted an ADA claim, that he sought reasonable accommodations for his eye condition and legal blindness but was denied for over three years any accommodation (id. at 13-14). He argues that the ADA created an affirmative duty to accommodate for his disability (id. at 12).

As noted in the background, Plaintiff retained Dr. James Aquavella as a medical expert (Docket No. 83, Aquavella Aff.). Dr. Aquavella, a fifty-year practitioner specializing on diseases and surgery of the cornea, reviewed medical records, transcripts,

examination before trial, and DOCCS facility reports concerning Plaintiff (id., Ex. A, Expert Report at 1), citing and attaching transcript excerpts and DOCCS consultation reports as exhibits to his report (id., Exs. A-F). He opined that Plaintiff with keratoconus received improper treatment for his eyes by being fitted with rigid contact lenes that increased scarring on his cornea, especially when those lenes are not continually refitted (id. at 2-3). Dr. Aquavella then faulted DOCCS for how it determined legal blindness (id. at 3). Plaintiff, as an inmate with keratoconus, was not the best candidate for regular use of contact lenses since he "had difficulty in using, cleaning and managing contact lenses in the prison setting" (id.). Soft lenses were ill-fitting and regularly required replacement while hard lenses also needed regular refitting (id. at 3-4). Dr. Aquavella concluded that DOCCS "unnecessarily delayed the determination that Mr. Cummings was legally blind based upon the mistaken belief that his status should be based on corrected vision even though he was not benefitting in any meaningful way from contact lenses" (id. at 4).

Defendants reply that Plaintiff's medical records attached to his counsel's declaration (Docket No. 83, Pl. Atty. Decl. ¶¶ 4-17, 19-22, 25, 28-29, Exs. 2-15, 17-20, 23, 26-27) are inadmissible hearsay (Docket No. 85, Defs. Reply Memo. at 3-4). They also would reject Plaintiff's expert affidavit since it did not contain any evidence showing the basis for the opinions (id. at 4). Defendants otherwise do not rebut the opinions made by Dr. Aquavella.

Alternatively, Defendants claim entitlement to qualified immunity, arguing that Plaintiff received treatment and Defendants reasonably believed that they were not violating Plaintiff's rights by not providing him with different contact lenses (id. at 8).

Plaintiff successfully obtained leave to file a sur-reply, arguing there that the medical records were certified from DOCCS's medical records (Docket No. 88, Pl. Atty. Sur-Reply Decl.). Plaintiff did not address Defendants' claim to qualified immunity.

### C. Personal Involvement

This Court first will consider whether Plaintiff established liability by any of the remaining, named State Defendants, save DOCCS, who will be termed collectively "Individual Defendants." Next, it will consider whether Plaintiff states a claim for deliberate indifference against the remaining Defendants. Finally, the Court considers Plaintiff's Americans with Disabilities Act claim against DOCCS.

#### 1. Evidence of Roles of Individual Defendants

Defendants rely upon Plaintiff's deposition that he did not recall the roles of the individual Defendants (Docket No. 77, Defs. Memo. at 1-7, 10-12; Docket No. 85, Defs. Reply Memo. at 1, 4-5) in concluding that Plaintiff's failure to establish the individual Defendants' involvement with the alleged civil rights violations (Docket No. 77, Defs. Memo. at 10-12). In reply, Defendants object to Plaintiff's explanation of his lack of memory during his deposition due to the lack of time to review documents (Docket No. 85, Defs. Reply Memo. at 4-5).

Plaintiff's personal knowledge and memory may raise a fact issue, but it is not material because Plaintiff relies upon medical records generated during his incarceration by DOCCS medical staff. The business record exception to Federal Rule of Evidence 802's bar to hearsay requires that the record be contemporaneous to the event, made by someone with knowledge; that the record was kept in the regular course of the organization; that the making of the record was a regular practice of the activity; that these

conditions were shown either by testimony of the record custodian or by certification; and that the Defendants as opponents do not show that the source of information or the method or circumstances of preparation indicated a lack of trustworthiness, Fed. R. Evid. 803(6)(A)-(E).

At issue here is the certification of Plaintiff's medical records produced in opposition to Defendants' Motion. Plaintiff introduced medical records created while he was in DOCCS custody by DOCCS medical staff or those consultants retained by DOCCS (see Docket No. 88, Pl. Atty. Sur-Reply Decl.). Plaintiff produced Defendants' certification of these medical records (id. ¶¶ 4, 6-7, Exs. 2, 5). This certification overcomes the barrier of the hearsay rule.

Furthermore, Defendants have not shown that the source of information (DOCCS's own medical records) was produced in such a manner that the records lack trustworthiness.

Therefore, Defendants' objection to Plaintiff's DOCCS medical records on hearsay grounds is rejected. With this evidence, this Court next considers whether Plaintiff established the involvement of each individual State Defendant who are now moving for judgment dismissing claims against them.

## 2. Individual Defendants' Involvement

State Defendants make the general argument that Plaintiff "has come forth with no facts constituting prima facie evidence that any defendant was personally involved in the alleged violations of his civil rights" (Docket No. 85, Defs. Reply Memo. at 7). This was in response to Plaintiff's contention that some Defendants "remained fixated on prescribing Plaintiff hard contact lenses, which ultimately damaged his eyes" while other

Defendants "rejected his efforts to secure reasonable accommodations so that he might better adapt to his deteriorating vision" (Docket No. 83, Pl. Memo. at 9). This Court considers the roles of each Defendant.

a.  Superintendents and Their Designees

As for claims against Superintendent Unger (and his designee Defendant Durfee) at Wyoming and Acting Superintendent Sheahan at Southport, they each participated in denying Plaintiff's reasonable accommodation application or in initially denying his grievances from denial of such an application. Plaintiff must establish that these officials are liable for their own conduct and not merely because they supervise other Defendants, see Tangreti v. Bachmann, 983 F.3d 609, 612, 619 (2d Cir. 2020); see also Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The requests for reasonable accommodation and the grievances of their denials may be failures to remedy violations upon notification (from the requests and grievances) or failing to act on information that unconstitutional acts were occurring if the denial of proper treatment is found to be an unconstitutional act. Plaintiff has not alleged that these Defendants participated in the violation merely by affirming the prescribed treatment for his eyes. The denial of the request or the grievance also is not gross negligence in the management of subordinates. Affirmance of a grievance by itself is insufficient to establish these officials' personal involvement, Rooks v. Santiago, No. 3:20CV299, 2021 WL 2206600, at *3 (D. Conn. June 1, 2021) (citing, among other cases, Perrilla v. Fischer, No. 13CV398, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013) (Arcara, J.).

Durfee's role was review of the appeal of the denial of reasonable accommodation as designee of Superintendent Unger. Acting Superintendent Sheahan of Southport

merely upheld the denial of a later grievance.  These actions fail to establish the personal involvement of any of these officials.  Defendants' Motion for Summary Judgment (Docket No. 77) seeking dismissal of claims against these Defendants therefore is granted.

### b.  Other State Defendants

Plaintiff named prison official Defendants Jacobs and Bradt as DOCCS employees he requested reasonable accommodations from, even though these officials had no role in deciding the requests (see Docket No. 83, Pl. Atty. Decl. Ex. 25).  Their participation merely was receipt and transmission of Plaintiff's requests; Plaintiff does not claim that these Defendants acted on his requests.  Further, Plaintiff does not allege that these prison officials had the authority to grant his requests or had the means to remedy his situation.  Nowhere does Plaintiff claim that these officials instituted a policy or custom (or had the authority to do so) regarding requests for reasonable accommodation of a disability.  There is no showing of gross negligence in the actions of these officials; each received Plaintiff's request and passed it along to the administrator charged with deciding them.  Plaintiff has not alleged that these officials mishandled or lost or otherwise delayed his requests.  Finally, Plaintiff fails to show any deliberate indifference on the part of these officials by failing to act on his requests; these officials acted in transmitting the requests.  Therefore Plaintiff's claims against these two Defendants is dismissed (and defense Motion for Summary Judgment (Docket No. 77) on this issue is granted).

While Mohring and Edwards also received Plaintiff's reasonable accommodation requests, this differs from Jacobs and Bradt by Mohring's and Edwards' denial of the requests.  Plaintiff also alleges that Mohring failed to submit medical verification for Plaintiff's request for reasonable accommodations (Docket No. 83, Pl. Aff. ¶ 22(a)(v)).

Plaintiff here has alleged direct participation by Mohring and Edwards, establishing their respective personal involvement.

Therefore, so much of Defendants' Motion for Summary Judgment (Docket No. 77) seeking dismissal of claims against Mohring and Edwards for lack of their personal participation is denied.

### c. State Medical Staff

As for the ophthalmologist Dr. Bozer and optometrist Dr. Weyand, Plaintiff merely alleges that they found Plaintiff's reduced visual acuity (Dr. Bozer) or implemented a plan for treatment (Dr. Weyand). The creation or continuation of the treatment plan that led to Plaintiff's legal blindness constitutes direct participation in the violation; thus, Dr. Weyand was personally involved. Therefore, Plaintiff alleges personal involvement by Dr. Weyand; Defendants' Motion for Summary Judgment (Docket No. 77) on this ground is denied.

Dr. Bozer, however, diagnosed Plaintiff and ordered his relocation within Wyoming Correctional Facility from a unit near the highway given limitations in his vision (Docket No. 1, Compl. at page 24; see Docket No. 83, Pl. Aff. ¶¶ 20 (incorporating Complaint at pages 17-26), 22(a)(iv)). Dr. Bozer's evaluation and treatment is not participation in the violation to make her involved personally; in fact, Dr. Bozer's order was an accommodation by relocating him away from a dangerous housing location given his eye condition and vision. Claims against Dr. Bozer are denied and Defendants' Motion for Summary Judgment (Docket No. 77) as to Dr. Bozer is granted.

Claims against Defendants Eden and Wurzel also are denied. While these Defendants may have been personally involved in Plaintiff's care, these claims arose after

Defendants afforded reasonable accommodation to Plaintiff by his transfer to the Sensory Disability Unit at Eastern in 2011. Furthermore, Eastern Correctional Facility is in Ulster County, which is in the Northern District of New York, 28 U.S.C. § 112(a); any claims arising from there would be venued in that District and not this Court. On this point, Defendants' Motion for Summary Judgment (Docket No. 77) is granted (albeit not on the grounds of personal involvement).

### d. Summary

Thus, State Defendants' Motion for Summary Judgment (Docket No. 77) dismissing claims for deliberate indifference against the individual State Defendants based upon their personal involvement is granted in part, denied in part. Dismissal of claims against certain individual Defendants (namely Superintendent Unger, Acting Superintendent Sheahan, Durfee, Jacobs, Bradt, Dr. Bozer, Dr. Eden, and Wurzel) is granted where Plaintiff does not allege any personal involvement in the deliberate indifference and denied as to other Defendants (namely Mohring, Edwards, and Dr. Weyand) who were personally involved.

This Court next considers whether Defendants should be granted judgment against DOCCS, Mohring, and Dr. Weyand because Plaintiff fails to state a deliberate indifference claim against them.

### D. Deliberate Indifference

#### 1. Objective Element

As for Plaintiff's deliberate indifference claims against the remaining Defendants for the period of 2008-11 when Plaintiff was at Attica, Wyoming, and Southport, on the objective element, Plaintiff's keratoconus was sufficiently serious that over that over

three-year period his vision deteriorated to legal blindness, <u>see</u> <u>Donald v. Wexford Health</u>
<u>Sources, Inc.</u>, 982 F.3d 451, 459 (7th Cir. 2020) (citing cases which found keratoconus
was a serious medical condition); <u>Street v. Els</u>, No. 17cv334, 2017 WL 1422430, at *4
(S.D. Ill. Apr. 19, 2017) (same conclusion).  Plaintiff established that he needed frequent
adjustment of his lens prescription that Defendants failed to provide.  The degree of pain
Plaintiff suffered as a result raises an issue of fact, with proof from DOCCS's medical
record (<u>see</u> Docket No. 83, Pl. Memo. at 7-8).  Plaintiff could not avoid this by wearing
glasses or a different set of contact lenses; his dependence upon DOCCS to furnish the
latter led to his condition worsening.

2.  Subjective Element

As for the subjective element for his deliberate indifference claim, Plaintiff has not
established that Defendants acted with such more than negligence to meet this element,
<u>Hathaway</u>, <u>supra</u>, 37 F.3d at 66.  Plaintiff claims that the standard merely is that
Defendants knew of his condition and disregarded it (Docket No. 83, Pl. Memo. at 9, citing
<u>Chance</u>, <u>supra</u>, 143 F.3d at 702, 703 (citing in turn <u>Hathaway</u>, <u>supra</u>, 37 F.3d at 66;
<u>Farmer</u>, <u>supra</u>, 511 U.S. at 837)).  This is only half of the required element, that
Defendants were aware of the facts from which an inference could be drawn that a
substantial risk exists.  Plaintiff also needed to establish that each Defendant drew the
inference, <u>Farmer</u>, <u>supra</u>, 511 U.S. at 837; <u>Hathaway</u>, <u>supra</u>, 37 F.3d at 66.  This drawing
of the inference is the "punishment" that is actionable under the Eighth Amendment,
<u>Farmer</u>, <u>supra</u>, 511 U.S. at 837; <u>see also</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 299-302,
111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), differing cruel and unusual punishment from
other civil rights violations.  Under <u>Farmer</u>, Defendants may show "that they knew the

underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," <u>Farmer</u>, <u>supra</u>, 511 U.S. at 844.

Remaining individual State Defendants Mohring and Dr. Weyand were either medical staff or administered reasonable accommodations for medical conditions and disabilities. Mohring was nurse administrator at Wyoming. (Docket No. 1, Compl. at page 24). Thus, each had (or should have) the awareness of the seriousness of Plaintiff's condition. Edwards, as deputy superintendent for programs there may not have had the requisite medical knowledge to know the medical consequences in denying Plaintiff's reasonable accommodation request (<u>id.</u> at page 25). She denied Plaintiff's March 2010 request due to the lack of medical verification (Docket No. 83, Pl. Atty. Decl. Ex. 25, at page 93 of 153).

Plaintiff, however, still needed to establish that they acted recklessly in denying his repeated requests for accommodations. Plaintiff has not shown evidence of any Defendants' state of mind that meets the subjective element, that each was equivalent to criminal recklessness in treating his eyes or in denying reasonable accommodations for over three years, <u>see</u> <u>Williams v. Bentivegna</u>, No. 14CV6105, 2015 WL 162994, at *7 (W.D.N.Y. Jan. 13, 2015) (Siragusa, J.); <u>Hathaway</u>, <u>supra</u>, 99 F.3d at 553. A disagreement as to method of treatment between Dr. Weyand and Plaintiff does not establish the subjective element, <u>see</u> <u>Chance</u>, <u>supra</u>, 143 F.3d at 703. Plaintiff has not shown that malpractice (if performed here) rose to the level of culpable recklessness showing Dr. Weyand evinced a conscious disregard of a substantial risk of serious harm, <u>Hathaway</u>, <u>supra</u>, 99 F.3d at 553.

As for Mohring, while he failed to provide medical verification when Plaintiff requested relocation (Docket No. 83, Pl. Aff. ¶ 22(a)(v)), Plaintiff eventually was relocated, and Plaintiff has not proved that Mohring acted with the requisite state of mind in that withholding or in earlier denying Plaintiff's requests for reasonable accommodations. As for Edwards, Plaintiff also fails to provide evidence that she knew of the risks to his eyesight in denying his requests much less that Edwards drew the inference of substantial risk would occur.

Plaintiff has not established the subjective element for his deliberate indifference claims. Therefore, Defendants' Motion for Summary Judgment (Docket No. 77) dismissing the deliberate indifference claim is granted.

E.  ADA

Plaintiff alleges that DOCCS and various DOCCS officials and employees were aware of his eye condition yet failed to provide him reasonable accommodations for that condition. He now argues that there are issues of fact on this point to preclude summary judgment to Defendants (Docket No. 83, Pl. Memo. at 13-14).

Defendants do not directly address this claim. Their arguments address whether Plaintiff can prove claims against the individual Defendants (Docket No. 77, Defs. Memo. at 1-7, 10-11). The ADA, however, does not apply against individual defendants, Webb, supra, 2018 WL 3651333, at *8 (see also Docket No. 18, Ans. ¶ 25).

Defendants generally argue that Plaintiff rests upon "mere allegations" without presenting competent evidence to show a genuine issue for trial (Docket No. 77, Defs. Memo. at 10, 11-12).

Whether Defendant DOCCS was subject to the ADA is not disputed. At issue are whether Plaintiff was a qualified individual under the ADA and whether he was denied the benefits of DOCCS's services due to his disability. While Plaintiff has an eye condition and was denied reasonable accommodations for it, was the denial due to his disability. For over three years, Plaintiff consistently requested reasonable accommodations as his eyesight worsened with the hard contact lenses prescribed by DOCCS. As held above, Plaintiff submitted admissible evidence in opposition to Defendants' Motion of his DOCCS medical records that present evidence of his disability and Defendants' treatment thereof.

This Court find that there are material issues of fact (1) whether Plaintiff was a qualified individual who had a major life activity—here, sight—impaired and substantially limited from 2008 to 2011, (2) whether that treatment was reasonable accommodation, and (3) whether the over three-year delay before Plaintiff's transfer to a sensory disability unit was reasonable. It is noteworthy that Defendants did not expressly contend with the ADA claims beyond their threshold evidentiary arguments. This Court also notes that Plaintiff did receive reasonable accommodations before the transfer to Eastern and the Sensory Disability Unit (itself a form of reasonable accommodation) from the transfer within Wyoming Correctional Facility from the farthest housing unit (and one closest to the highway) to one closer to the main entrance (Docket No. 1, Compl. at page 24) and presumably safer for a visually impaired inmate.

As Plaintiff's vision worsened from 2008, he eventually became disabled, leading to his transfer to Eastern in 2011. The fact question is whether his vision was so impaired in 2008 that he then was disabled or when he became so impaired that he was disabled to make him a qualified individual. His worsening condition also makes a fact question

what constituted reasonable accommodations during that period.  This also informs the last issue of whether the over three years Plaintiff spent applying for accommodations was reasonable.

Thus, Defendants' Motion for Summary Judgment (Docket No. 77) dismissing Plaintiffs' ADA claim is denied.

### F.  Qualified Immunity

Defendants alternatively claim entitlement to qualified immunity (Docket No. 85, Defs. Reply Memo. at 8).  Apparently, Defendants contend that the right Plaintiff claims is the right to receiving the correct contact lenses to avoid deliberate indifference to his care or afford him reasonable accommodations when not provided those lenses (cf. id.). Neither side, however, clearly articulates what the right Plaintiff claims for this Court to determine if the United States Supreme Court or the Second Circuit declared existed and that Defendants would have understood in 2008-11 when they allegedly violated, cf. Doe v. Phillips, supra, 81 F.3d at 1211.

Given the determination above of Plaintiff's stated deliberate indifference and ADA claims, this Court need not determine whether Defendants also enjoy qualified immunity. Plaintiff's deliberate indifference claims are rejected on their substance; therefore, this Court need not determine whether Defendants also enjoy qualified immunity from that claim.

Plaintiff's ADA claim is against DOCCS only.   While individual officials and employees of DOCCS might enjoy qualified immunity, see, e.g., Lowth, supra, 82 F.3d at 568-69 (doctrine of qualified immunity shields officials), DOCCS as a department of New York State does not.  DOCCS is not asserting sovereign immunity.  Even if Plaintiff stated

an ADA claim in the personal capacities of the individual State Defendants (cf. Docket No. 1, Compl. at pages 2-6 (naming individual Defendants sued in their official and individual capacities), as another court concluded, "Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness," Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999); Alster, supra, 745 F. Supp. 2d at 342.  As found above, the severity of Plaintiff's condition precludes summary judgment on qualified immunity grounds, see Alster, supra, 745 F. Supp. 2d at 342, as well as on the merits of Plaintiff's ADA claim.

Thus, this Court does not further consider Defendants' assertion of qualified immunity.

## IV.    Conclusion

Plaintiff sued every person involved in the treatment of his keratoconus, those who prescribed the wrong type of contact lenses or failed to adjust his prescription and prison officials who failed to grant him reasonable accommodations as he became legally blind while in DOCCS custody between 2008 to 2011.  The remaining claims are for deliberate indifference in failing to treat or failing to provide reasonable accommodations to Plaintiff during that over three-year period and violation of the Americans with Disabilities Act for not furnishing those accommodations.

Moving State Defendants' Motion for Summary Judgment (Docket No. 77) is granted in part, denied in part.  As for his deliberate indifference claims, Plaintiff established the personal involvement of only Defendants Gregory Mohring, Carol Edwards, and Dr. David Weyand but did not establish the personal involvement of the other individual State Defendants (Superintendent David Unger, Acting Superintendent

Michael Sheahan, Sandra Durfee, Suzanne Jacobs, Bryan Bradt, Dr. Paula Bozer, Dr. Robert Eden, and Dr. Richard Wurzel) for actions at Attica, Wyoming, or Southport Correctional Facilities in 2008 to 2011.

Plaintiff's deliberate indifference claim under the Eighth and Fourteenth Amendments against DOCCS and those individual Defendants personally involved is dismissed because Plaintiff failed to establish the subjective element for a deliberate indifference cruel and unusual punishment claim. This is despite whatever issue of fact exists for the objective element for this claim.

Finally, Defendants' Motion for Summary Judgment (Docket No. 77) dismissing Plaintiff's Americans with Disabilities Act claim against DOCCS is denied. There remain material issues of fact whether Plaintiff was a qualified individual under the ADA (or when he became a qualified individual); whether the lack of accommodations was reasonable from 2008 to 2011 and what level of accommodation was reasonable during that period. These issues are related to the state of Plaintiff's eye condition over time.

Defendants' assertion of qualified immunity is rejected.

As for Plaintiff's remaining ADA claims, parties are to engage in further mediation before Kevin Hogan (see Docket No. 46). A further status conference before this Court will be held on August 11, 2021, unless the case is otherwise resolved. If unresolved, this Court will schedule this status conference in preparation for jury trial.

## V. Orders

IT HEREBY IS ORDERED, that moving Defendants' Motion for Summary Judgment (Docket No. 77) is GRANTED in part and DENIED in part, consistent with this decision.

FURTHER, that this case remains referred for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall re-engage with Mediator Kevin Hogan for further mediation.

FURTHER, that within 10 days of the mediation session and any subsequent sessions, the mediator shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that the mediation process shall be completed by August 4, 2021.

FURTHER, that the parties shall timely comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties shall appear before this Court on Wednesday, August 11, 2021, at 10:00 am, to report on the status of this case if it is not sooner resolved through mediation.

SO ORDERED.


Dated:      June 22, 2021
              Buffalo, New York


                                  s/William M. Skretny
                                WILLIAM M. SKRETNY
                          United States District Judge